Filed 8/10/15  Rodriguez v. Bank of America CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NESTOR RODRIGUEZ,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>Defendants and Respondents. | B258819<br><br>(Los Angeles County<br>Super. Ct. No. YC068142) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ramona G. See, Judge.  Affirmed.

De Novo Law Firm and Benjamin Yrungaray for Plaintiff and Appellant.

Bryan Cave, Glenn J. Plattner, Christina A. Rea, and Monica A. Kohles, for Defendant and Respondent, Bank of America.

No appearance for Defendant and Respondent, The Bank of New York Mellon.

Plaintiff Nestor Rodriguez (Rodriguez) appeals a judgment of dismissal in favor of defendants Bank of America and The Bank of New York Mellon (collectively, defendants) following an order sustaining a demurrer to the second amended complaint without leave to amend. We affirm.

The second amended complaint alleges that after Rodriguez fell behind in his mortgage payments, defendants agreed not to foreclose on his property for 120 days so Rodriguez could attempt to arrange a short sale.[1] Notwithstanding this representation, defendants foreclosed on the property before the expiration of the 120 days. As a result, Rodriguez lost his home and was forced to file for bankruptcy.

The second amended complaint asserts three causes of action, for intentional misrepresentation, negligent misrepresentation, and unfair business practices. Each suffers from the same defect: Rodriguez fails to allege a causal relationship between the alleged misrepresentation (defendants' promise not to foreclose to allow Rodriguez to attempt to sell the property) and his alleged damages (the loss of his home and resulting bankruptcy). That is, because Rodriguez does not allege that he could have avoided foreclosure but for his reliance on defendants' representations, he has not pled damages resulting from the misrepresentations. Accordingly, the second amended complaint fails to state a claim for relief, and the demurrer was properly sustained.

## FACTUAL AND PROCEDURAL BACKGROUND

Because this appeal follows the sustaining of a demurrer, the following recitation is based on those facts pleaded in the complaint and those of which we may take judicial notice. (*Paul v. Patton* (2015) 235 Cal.App.4th 1088, 1091.)

### I.

### The Loan

On about September 6, 2006, Rodriguez borrowed approximately $633,000 from First Bank Mortgage to purchase a residential property in Torrance, California (the

---

[1] In a short sale, the lienholder agrees to extinguish its lien in exchange for sale proceeds that are less than the lien amount.

property).  The loan was secured by a deed of trust recorded on September 18, 2006.
Rodriguez alleges that defendant Bank of America was the "servicer of the note secured
by deed of trust."

The loan agreement provided that Rodriguez would make interest-only payments
for the first ten years of the loan, and then would pay interest and principal for the
remaining 20 years.  It also provided for a prepayment penalty equal to six months'
advance interest in some circumstances.  Rodriguez's initial payments were $3,555 per
month based on an interest rate of 6.750 percent, but after five years the interest rate was
subject to readjustment every six months, up to a rate cap of 11.750 percent.

The loan documents were printed in English.  However, Rodriguez primarily
speaks Spanish and has a limited ability to read and speak English.  A representative of
First Bank Mortgage explained the terms of the loan to Rodriguez in Spanish, but
Rodriguez alleges he did so inaccurately, and "[i]t wasn't until Plaintiff faced imminent
foreclosure that he understood that the loan terms did not accurately reflect the loan
explained to him by the broker."

## II.

### The Default and Foreclosure

In 2008, Rodriguez stopped making monthly interest payments.  A Notice of
Default was recorded on January 7, 2009, and a notice of trustee's sale was recorded on
July 11, 2011.

Rodriguez alleges that he contacted Bank of America to attempt to avoid
foreclosure.  He was directed to work with account manager Michael Wolcott,
represented to be his exclusive Bank of America contact.  Rodriguez alleges that Wolcott
requested significant information and agreed to allow Rodriguez to attempt to sell the
property.  On October 20, 2011, Wolcott "allowed Plaintiff to list the property as a short
sale."  Wolcott represented that a 120-day marketing period was to begin on October 3,
2011, and told Rodriguez "that no foreclosure would take place during this time."

3

However, "[o]n December 19, 2011, before the expiration of the marketing period, Bank of America foreclosed on the property without further notice or explanation."

## III.

## The Original and First Amended Complaints

Rodriguez filed the present action against Bank of America and The Bank of New York Mellon[2] on November 14, 2012.

Defendants demurred. Rodriguez did not oppose the demurrer, but instead filed a first amended complaint, which alleged causes of action for predatory lending practices, breach of contract, promissory estoppel, intentional misrepresentation, negligent misrepresentation, unfair business practices, and breach of the implied covenant of good faith and fair dealing. Defendants again demurred. The court sustained the demurrer with leave to amend as to the causes of action for intentional misrepresentation, negligent misrepresentation, and unfair business practices, and sustained the demurrer without leave to amend as to the remainder of the complaint. The court explained that the misrepresentation claims "are not stated with the requisite specificity" and plaintiff "does not allege facts demonstrating Wolcott's authority to act on behalf of defendants." As to the unfair business practices claim, the court said, plaintiff "fails to allege facts demonstrating an injury in fact and lost money or property caused by the unfair competition. [Citation.] Plaintiff also fails to plead particularized facts supporting any unlawful, fraudulent, or unfair business practice. [Citation.] Further, Plaintiff[] ha[s] not alleged sufficient facts of an underlying cause of action."

---

[2]    Rodriguez alleges that defendant The Bank of New York Mellon ("BONY") was "the investor of the Property secured by a deed of trust," but there are no allegations in the second amended complaint directed specifically against BONY. BONY has not appeared in this appeal.

## IV.

### The Second Amended Complaint

Rodriguez filed the operative second amended complaint on September 19, 2013. The pleading alleged three causes of action: (1) intentional misrepresentation; (2) negligent misrepresentation; and (3) unfair business practices.

Defendants demurred and filed a request for judicial notice. Rodriguez opposed the demurrer. After hearing argument, the trial court sustained the demurrer without leave to amend, finding as follows: "(1) The First Cause of Action for Fraud and the Second Cause of Action for Negligent Misrepresentation fail to allege the requisite specific facts to support these claims. Plaintiff does not allege when, where, and by what means the alleged misrepresentations were made. [Citation.] Plaintiff does not allege facts demonstrating justifiable reliance on Wolcott's representations. Plaintiff fails to allege facts to show damages proximately caused by these representations. [Citation.] (2) The Third Cause of Action for Unfair Business Practices fails to allege sufficient facts to support this claim including an injury in fact and lost money or property caused by the alleged unfair competition. [Citation.] Plaintiff fails to plead particularized facts supporting any unlawful, fraudulent, or unfair business practice. [Citation.] Further Plaintiffs have not alleged sufficient facts of any underlying cause of action. [Citation.] Finally, to the extent that this claim is based on activities stemming from the loan origination process, the cause of action is barred by the four-year statute of limitations."

A judgment of dismissal was entered July 3, 2014, and notice of entry of judgment was served on July 10, 2014. Rodriguez timely appealed.

### DISCUSSION

### I.

### Standard of Review

"On appeal from a judgment after a demurrer is sustained without leave to amend, we review the order de novo and exercise our independent judgment on whether the complaint states a cause of action as a matter of law. [Citation.] We assume the truth of

5

all properly pleaded material facts, as well as facts inferred from the pleadings and those of which judicial notice may be taken. [Citation.] However, we do not assume the truth of contentions, deductions or conclusions of fact or law [citation] and we disregard allegations contrary to the law or to a fact of which judicial notice may be taken [citation]." (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 605 (*Graham*).)

## II.

## The Misrepresentation Claims

### A.      *Elements of Misrepresentation Claims*

The first and second causes of action are for intentional and negligent misrepresentation. "The essential elements of a count for intentional misrepresentation are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638; *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1088-1089 & fn. 2.) The essential elements of a count for negligent misrepresentation are the same except that [negligent misrepresentation] does not require knowledge of falsity but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true. (Civ. Code, § 1710, subd. 2; *Gagne v. Bertran* (1954) 43 Cal.2d 481, 488; *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 792.) Each element of a fraud count must be pleaded with particularity so as to apprise the defendant of the specific grounds for the charge and enable the court to determine whether there is any basis for the cause of action, although less specificity is required if the defendant would likely have greater knowledge of the facts than the plaintiff. (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216-217.)" (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 230-231.)

*B.    The Requirement of Pleading a Causal Relationship Between the Alleged Misrepresentations and Damages*

" ' "A plaintiff asserting fraud by misrepresentation is obliged to . . . ' "establish a complete causal relationship" between the alleged misrepresentations and the harm claimed to have resulted therefrom.' " [Citation.]' [Citation.]  This requires a plaintiff to allege specific facts not only showing he or she actually and justifiably relied on the defendant's misrepresentations, but also how the actions he or she took in reliance on the defendant's misrepresentations caused the alleged damages.  [Citation.]  [¶] ' " ' "Misrepresentation, even maliciously committed, does not support a cause of action unless the plaintiff suffered consequential damages." ' " [Citation.]' [Citation.]  Indeed, ' " '[a]ssuming . . . a claimant's reliance on the actionable misrepresentation, no liability attaches if the damages sustained were otherwise inevitable or due to *unrelated causes.*' [Citation.]" [Citation.]  If the defrauded plaintiff would have suffered the alleged damage even in the absence of the fraudulent inducement, causation *cannot* be alleged and a fraud cause of action cannot be sustained.' [Citation.]" (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1499 (*Rossberg*).)

The court applied these principles to hold that a plaintiff had not adequately pled a misrepresentation claim in *Graham*, *supra*, 226 Cal.App.4th 594.  There, the plaintiff borrowed money to purchase a home.  Several years later, he defaulted on the loan and received a notice of sale.  He sued to halt foreclosure proceedings, alleging among other things that defendant's lending personnel had made fraudulent misrepresentations to him by stating that the home's fair market value was increasing and the loan "was 'good for [him],' while allegedly knowing the appraisal was 'outrageously speculative.' " (*Id.* at p. 599.)  The trial court sustained defendant's demurrer, and plaintiff appealed.

The Court of Appeal affirmed, concluding that plaintiff did not adequately allege a nexus between the alleged misrepresentations and his alleged economic harm.  (*Graham*, *supra*, 226 Cal.App.4th at p. 608.)  It explained:  "[Plaintiff] does not allege he could have or would have obtained a better loan from a different lender absent the alleged

7

representations regarding the appraisal. Nor does he allege he would not have entered the market absent the alleged representations or omissions. . . . The risk of property loss from foreclosure is the result of [plaintiff's] default on the loan, not the alleged conduct by defendants. Therefore, [plaintiff] has not sufficiently pleaded a causal connection between any damages and any actionable conduct by defendants in entering into the loan agreement." (*Id*. at p. 609.)

The court similarly concluded in *Rossberg*, *supra*, 219 Cal.App.4th at p. 1499. There, plaintiffs received a home loan from defendant, but several years later fell behind on their mortgage payments. They began discussions with defendant about modifying their loans, and on several occasions they were told they had been granted a loan modification. (*Id*. at p. 1487.) Ultimately, however, defendant recorded a notice of default and initiated a foreclosure sale. Plaintiffs filed suit against the lender. (*Id*. at pp. 1488-1489.)

The trial court sustained defendant's demurrer to plaintiffs' complaint, and plaintiffs appealed. The Court of Appeal affirmed. It noted that although plaintiffs had alleged specific fraudulent promises by defendant's employees, they did not allege that their reliance on the promised loan modifications caused them to default on their loans or prevented them from curing their existing defaults. Plaintiffs also did not allege that, but for the fraudulent promises, they would have sold their home and avoided foreclosure. (*Rossberg*, *supra*, 219 Cal.App.4th at pp. 1499-1500.) Accordingly, plaintiffs failed to state a fraud claim because they "fail[ed] to specifically allege how [their] reliance on the promised loan modifications caused them harm." (*Id*. at p. 1499.)

C. *The Demurrer Was Properly Sustained Because Rodriguez Failed to Allege that He Would Not Have Lost His Home and Would Have Filed for Bankruptcy but for the Alleged Misrepresentations*

In the present case, Rodriguez alleges that as a result of defendants' intentional and negligent misrepresentations, he "lost ownership of the property and his credit has been irreparably damaged." As we have said, this allegation is sufficient to state a

8

misrepresentation claim only if plaintiff pleads the necessary causal link between the alleged misrepresentations and the loss of the property—i.e., if he alleges "*specific facts not only showing he . . . actually and justifiably relied on the defendant's misrepresentations, but also how the actions he . . . took in reliance on the defendant's misrepresentations caused the alleged damages.*" (*Rossberg*, *supra*, 219 Cal.App.4th at p. 1499, italics added.)

The second amended complaint alleges that in reliance on defendants' alleged misrepresentations, Rodriguez agreed to a short sale, marketed the property according to defendants' requirements, and allowed defendants to perform an inspection of the property. Rodriguez does not allege that any of these actions caused his home to be foreclosed upon or caused him any other harm, however. Accordingly, these alleged actions do not create the necessary causal link between defendants' alleged misrepresentations and Rodriguez's damages.

The second amended complaint also alleges that in reliance on defendants' misrepresentations, Rodriguez "was prevented from seeking alternative avenues to cure the default on the property including a Chapter 13 bankruptcy, which Plaintiff tried to file after learning that the sale was not cancelled." Rodriguez does not allege *how* the defendants' alleged misrepresentations "prevented" him from seeking alternative avenues to cure the default, nor does he allege that any such alternative avenues would have allowed him to avoid foreclosure.[3] For example, Rodriguez does not allege that but for the alleged misrepresentations, he would have remained current on his loan—to the contrary, he alleges that he was unable to make his loan payments "as a result of the high costs of the home and the poor economy." Similarly, he does not allege that but for the alleged misrepresentations, he would have sought and obtained a loan from another

---

[3]     Indeed, the documents in Bank of America's request for judicial notice, filed in support of the demurrer, reflect that Rodriguez *did* file a Chapter 13 bankruptcy approximately two months before the alleged short sale marketing period allegedly began and four months before the foreclosure sale. The bankruptcy action was dismissed "for failure to file information."

lender that would have allowed him to avoid default and retain ownership of the property—again, his allegations are to the contrary, asserting that the terms of defendants' loan "ma[de] it impossible for Plaintiff to get out of the loan."

For these reasons, therefore, Rodriguez has not sufficiently pled a causal connection between defendants' alleged misrepresentations and his damages. The trial court did not err in sustaining the demurrer to the first and second causes of action.

## III.

## The Unfair Business Practices Claim

The third cause of action alleges unfair business practices under Business and Professions Code sections 17200 and 17500.[4] Section 17200 "prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.' [Citation.] Its purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' [Citations.]" (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320 (*Kwikset*).) Section 17500 makes it unlawful for a person, firm, corporation, association, or any employee thereof "with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto" by means of advertising that "is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. . . ."

Like a cause of action for intentional or negligent misrepresentation, a cause of action for unfair business practices must allege damages *caused by* the alleged wrongful conduct. Section 17200 et seq. "requires that a plaintiff's economic injury come 'as a result of' the unfair competition or a violation of the false advertising law. (§§ 17204, 17535.) 'The phrase "as a result of" in its plain and ordinary sense means "caused by" and requires a showing of a causal connection or reliance on the alleged

---

[4] All subsequent statutory references are to the Business and Professions Code.

misrepresentation.' " (*Kwikset*, *supra*, 51 Cal.4th at p. 326.) Section 17500 also requires an individual suing under the statute "to have ' "suffered injury in fact" ' and to have ' "lost money or property as a result of such unfair competition." ' [Citations.]" (*Bower v. AT&T Mobility, LLC* (2011) 196 Cal.App.4th 1545, 1555.)

The factual predicate of Rodriguez's unfair business practices claim is identical to the factual predicate of his intentional and negligent misrepresentation claims: Rodriguez alleges that although "[d]efendants' short sale agreement provided that foreclosure activity would cease during the loan modification," defendants "did not stop foreclosure activity and foreclosed on the property on December 19, 2011."[5] As a result, "Plaintiff has been damaged by losing his home and having his credit negatively impacted."

As we have already explained, Rodriguez has failed to plead the necessary causal link between the alleged misrepresentations and the loss of his property. (See section II(C), *ante*.) His failure to plead causation is fatal to his unfair business practices claims.

## IV.

## Leave to Amend

" 'If it is reasonably possible the pleading can be cured by amendment, the trial court abuses its discretion by not granting leave to amend. [Citation.] The plaintiff has the burden of proving the possibility of cure by amendment.' " (*Nolte*, *supra*, 236 Cal.App.4th at p. 1406.)

Rodriguez does not explain on appeal how he could amend his complaint to withstand demurrer. Further, he did not propose any amendments in opposition to the demurrer. As it is his burden to show how he could save his complaint by amendment,

---

[5] The third cause of action also alleges that defendants committed unfair business practices by "marketing loans to Spanish-speaking borrowers and materially misleading them about the terms and conditions of their written loan terms." Rodriguez does not contend on appeal that this allegation states a cause of action under sections 17200 or 17500, and thus we deem it forfeited. (See *Nolte v. Cedars-Sinai Medical Center* (2015) 236 Cal.App.4th 1401, 1409-1410 (*Nolte*).)

the trial court did not abuse its discretion in sustaining the demurrer without leave to amend.  (See *Nolte*, *supra*, 236 Cal.App.4th at p. 1410.)

## DISPOSITION

The judgment of dismissal is affirmed.  Respondent Bank of America shall recover its appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.

We concur:



KITCHING, J.



JONES, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.